CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED
APR 2 5 2006
JOHN F. CORCORAN, CLERK
BY: /s/
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | |
|---|---|
| CAROLE M. MOATS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. 7:05cv00462 |
| v. ) | |
| ) | |
| JO ANNE B. BARNHART, ) | By: Michael F. Urbanski |
| Commissioner of Social Security, ) | United States Magistrate Judge |
| ) | |
| Defendant. ) | |
| ) | |

## MEMORANDUM OPINION

Plaintiff Carole M. Moats ("Moats") brought this action for review of the decision of the Commissioner of Social Security denying her claim for disability insurance benefits ("DIB") and supplemental security income ("SSI") under Title II and Title XIV of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383. The parties have consented to the undersigned Magistrate Judge's jurisdiction over this matter, and the case is before the court on cross motions for summary judgment. Having reviewed the record, and after briefing and oral argument, the case is now ripe for decision. As the ALJ's decision is amply supported by evidence in the record, it must be affirmed.

I

Plaintiff was born on October 27, 1966, and graduated from high school. (Administrative Record, hereinafter "R." at 15, 55, 73, 346) Plaintiff's previous work includes that of a packer, an automotive parts adviser, an automotive finance clerk, and a certified nurse's aide. (R. 15, 68, 347-49) Plaintiff last worked for a temporary agency in the spring of 2003, packing for a printing company. (R. 347) Plaintiff filed applications for DIB on June 13, 2003 and SSI on July 24,

2003, alleging she became disabled on September 7, 2002, due to degenerative disc disease with permanent nerve damage, as well as osteoarthritis. (R. 14, 15, 67, 321) Plaintiff's claims were denied at both the initial and reconsideration levels of administrative review, (R. 14), and an administrative hearing was held before an administrative law judge ("ALJ") on March 8, 2005. (R. 340-70) On March 24, 2005, the ALJ issued a decision denying plaintiff's claims for DIB and SSI, finding plaintiff retained the residual functional capacity ("RFC") to perform light work. (R. 23) The ALJ found plaintiff capable of lifting and carrying twenty (20) pounds occasionally, and ten (10) pounds frequently; standing, walking and sitting six (6) hours out of an eight (8) hour workday; with limited pushing and pulling; occasional climbing, stooping, kneeling, crouching and crawling; and frequent balancing. (R. 23)

The ALJ's decision became final for the purposes of judicial review under 42 U.S.C. § 405(g) on June 28, 2005, when the Appeals Council denied plaintiff's request for review. (R. 6-8) Plaintiff then filed this action challenging the Commissioner's decision.

## II

Plaintiff first argues that the ALJ erred by failing to properly consider the opinion of her treating physician Dr. Johnson. Plaintiff contends that Dr. Johnson's opinion that plaintiff is disabled from all work is well supported by the medical records and should have been given greater weight by the ALJ. Plaintiff argues the KEY functional assessment, rating her capable of light work, should have been accorded little weight because it reflects her abilities in a mere snapshot of time, while Dr. Johnson maintained a long-standing treatment relationship with Moats and was able to monitor her physical abilities on both good and bad days. In the

2

alternative, plaintiff requests that the court remand this case to the Commissioner for consideration of new evidence under sentence six of 42 U.S.C. § 405(g).

The court's review is limited to a determination as to whether there is substantial evidence to support the Commissioner's conclusion that plaintiff failed to meet the conditions for entitlement established by and pursuant to the Act. If such substantial evidence exists, the final decision of the Commissioner must be affirmed. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990); Laws v. Celebrezze, 368 F.2d 640 (4th Cir. 1966). Stated briefly, substantial evidence has been defined as such relevant evidence, considering the record as a whole, as might be found adequate to support a conclusion by a reasonable mind. Richardson v. Perales, 402 U.S. 389, 401 (1971).

### III

Plaintiff contends that the ALJ failed to give controlling weight to the opinion of her treating physician Robert R. Johnson, M.D. Moats first saw Dr. Johnson on December 18, 2003 at the Rheumatology Clinic of Carilion Family Medicine. (R. 237) Dr. Johnson diagnosed her with chronic pain syndrome, meeting the definition for fibromyalgia. (R. 269) He also noted she had underlying cervical spondylosis, degenerative joint disease of the knee, but no suggestion of systemic rheumatologic disease. (R. 269) He discussed with plaintiff the need to exercise and improve her sleep. (R. 269)

Plaintiff met with Dr. Johnson on April 14, 2004 for a follow-up visit. (R. 256) Plaintiff reported pain in her left knee, neck, and left shoulder, and rated her pain at a level 8 out of 10. (R. 256) She stated her pain was aggravated by a fall on March 22, 2004. (R. 256-57) Dr. Johnson prescribed Zanaflex and recommended physical therapy. (R. 256)

3

Plaintiff presented to Dr. Johnson again on August 9, 2004, complaining of neck, left shoulder, left arm, and hand pain, which she rated at a level 7. (R. 252) Dr. Johnson diagnosed Moats with fibromyalgia with flares of neck and upper back pain, shoulder pain, hand pain, and knee pain. (R. 252) Dr. Johnson referred plaintiff to the National Fybromyalgia Association website and magazine, and discussed with her the importance of sleep and exercise, as well as stress management and the benefits of a hot paraffin bath for hand pain. (R. 252)

On the same day, Dr. Johnson completed a Virginia Department of Social Services Medical Report for General Relief and Medicaid form. (R. 274) In this report, Dr. Johnson diagnosed Moats with fibromyalgia and a history of C-spine surgery with a fusion of C6-C7. (R. 274) He categorized her prognosis as "unchanged" and opined that the diagnosis rendered plaintiff unable to work or support herself for a thirty (30) day period. (R. 274) Dr. Johnson further stated that her condition permanently limited her capacity for self-support. (R. 274) He noted she is restricted from lifting more than five (5) pounds, using her hands and arms repetitively, and prolonged sitting, standing, walking, climbing and squatting. (R. 274) Dr. Johnson recommended exercise, physical therapy, and medication. (R. 274)

Dr. Johnson saw plaintiff again on February 9, 2005. (R. 307) He diagnosed her with fibromyalgia; chronic neck, back and shoulder pain; shoulder periarthritis with bursitis tendinitis and rotator cuff dysfunction; and sleep disturbance. (R. 307) He noted plaintiff had not been able to progress with exercise due to pain, (R. 308), but again recommended that she participate in regular aerobic exercise. (R. 307) Dr. Johnson injected her left subacromial bursa with Depomedrol and Lidocaine and replaced her medication Elavil with Trazodone. (R. 307)

4

On February 11, 2005, Dr. Johnson filled out a clinical assessment of pain, finding plaintiff's pain present to the extent it distracts her and precludes the adequate performance of daily activities or work, that physical activity greatly increases pain and causes abandonment of tasks related to daily activities or work, and that medication severely limits the patient's effectiveness in the workplace. (R. 306) Dr. Johnson noted plaintiff has frequent flares where her pain is incapacitating, and activity increases pain to the extent that she needs bed rest and medication. (R. 306)

The Fourth Circuit gives great weight to the opinion of a treating physician, for such opinion reflects expert judgment based on continuous observation of a patient's condition over a prolonged period of time. Smith v. Schweiker, 795 F.2d 343, 345-46 (4th Cir. 1986); Mitchell v. Schweiker, 699 F.2d 185, 187 (4th Cir. 1983). However, the Commissioner is not bound by a treating physician's opinion. Mitchell, 699 F.2d at 187. The treating physician rule does not require that the testimony of a treating physician be given controlling weight. Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (citing Campbell v. Brown, 800 F.2d 1247, 1250 (4th Cir. 1986)). The ALJ may choose to give less weight to the testimony of a treating physician if there is persuasive contrary evidence. Foster v. Heckler, 780 F.2d 1125, 1127 (4th Cir. 1986). If a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight. Craig v. Chater, 76 F.3d 585, 590 (4th Cir. 1996).

In his decision, the ALJ noted Dr. Johnson's reports, assessing plaintiff as disabled and in such pain as to preclude the adequate performance of daily work, address issues clearly reserved to the Commissioner. (R. 21) The ALJ further stated that Dr. Johnson's opinion was

5

inconsistent with Moats' activities of daily living and the credible objective medical evidence of record. (R. 21) As such, the ALJ accorded this opinion very little weight. (R. 21) Plaintiff argues that Dr. Johnson's opinion, as that of a treating physician, should have been given great weight and contends there is no persuasive contrary evidence in the record that would allow the ALJ to disregard Dr. Johnson's opinion. (Pl.'s Br. 9)

The determination of disability is an issue reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e)(1), 416.927(e)(1). A statement by a medical source that a patient is disabled does not require a finding of disability by the Commissioner. Id. Thus, Dr. Johnson's opinion that plaintiff is disabled does not mandate a similar finding by the ALJ.

Likewise, the record contains persuasive contrary evidence to Dr. Johnson's finding, which allows the ALJ to give less weight to his opinion. Such evidence includes the KEY functional assessment completed by Laura A. Fickel, O.T.L., C.H.T., on June 17, 2004. (R. 312-20) This assessment revealed plaintiff has the capacity for light work. (R. 312) Plaintiff placed herself in this category of work through her performance on various tests of her physical abilities. (R. 312) During the tests, plaintiff exhibited pain behaviors in the form of sitting in between some tasks, walking in between others, shaking her hands during others, and groaning and sighing. (R. 312) Plaintiff also complained of pain in the neck, arms, hands and knees. (R. 312) Yet plaintiff was physically capable of light work, and it was recommended that she return to work within those parameters and maintain a home exercise program. (R. 312)

Plaintiff argues this KEY functional assessment should be accorded little weight because Laura Fickel only monitored the plaintiff for a brief period of time and did not provide any follow-up evaluation regarding how plaintiff fared the day after testing. (Pl.'s Br. 10) At oral

argument, plaintiff argued that this KEY functional assessment was a mere snapshot of her physical abilities. The nature of fibromyalgia, plaintiff claimed, prevents an accurate one-time assessment because the condition produces symptoms that wax and wane and vary by day. Plaintiff contended that Dr. Johnson, who has seen plaintiff numerous times when she has felt both well and not well, was in a better position to evaluate her capacity for work performance.

However, Dr. Johnson's conclusions that the plaintiff is unable to work, (R. 274), and that her pain and medications render her unable to adequately and effectively perform work activities, (R. 306), are unsupported by evidence in the record. On one hand, Dr. Johnson opines physical activity increases plaintiff's pain to the point that it becomes incapacitating and precludes effective work performance, (R. 306), and on the other hand he encourages plaintiff to be more active, move more, and learn to manage her pain flares. (R. 292) The conclusions he reaches on the Medical Report for General Relief and Medicaid form and the clinical assessment of pain form are not based on medical evidence but on plaintiff's subjective complaints of pain. (R. 274, 306) Dr. Johnson examined Moats four times. (R. 237-38, 252-55, 256-58, 269-71, 307-09) He noted she had no suggestion of systemic rheumatologic disease, (R. 269), and that she had 5/5 muscle strength in her deltoids, biceps, triceps, quadriceps, hamstrings, and hip flexors. (R. 271) While some areas were tender, no swelling was reported and plaintiff had normal motion. (R. 271) The day Dr. Johnson assessed plaintiff as unable to work, (R. 274), he also noted upon examination that plaintiff was walking daily for exercise. (R. 254) Plaintiff previously reported these walks lasted thirty (30) to forty-five (45) minutes. (R. 270)

Records from Dr. Haffizulla lend no support to the conclusion reached by Dr. Johnson. Dr. Haffizulla, as plaintiff's primary care physician, saw plaintiff on a number of occasions.

7

(R. 225-27, 241-48, 249-51, 263-65, 266-68, 278-80, 281-83, 284-86, 287-89, 290-92, 334) On plaintiff's first visit in July of 2003, Dr. Haffizulla noted she would temporarily sign Moats' disability form until plaintiff established herself in the Roanoke area and could find a job. (R. 251) Dr. Haffizulla later noted she was unsure of plaintiff's affect and how much of her perceived pain and distress was real. (R. 243) On May 21, 2004, Dr. Haffizulla reported plaintiff brought her a copy of a previous disability form and asked her to change it, because plaintiff felt she could not do sedentary work and the form kept her from getting full disability benefits. (R. 225) Dr. Haffizulla stated that plaintiff needed a proper evaluation for disability and accordingly referred her to Laura Fickel for an occupational capacity assessment. (R. 226) When plaintiff returned to see Dr. Haffizulla after the assessment on July 22, 2004, the doctor noted plaintiff appeared upset that the occupational report was not to her liking, and plaintiff again stated she did not believe she could manage sedentary work and asked Dr. Haffizulla to change the wording of her note to say she was unable to perform sedentary work due to fibromyalgia. (R. 290)

There is no evidence that Dr. Haffizulla ever changed her note or discredited the conclusion reached in the KEY functional assessment she recommended. As plaintiff's primary care physician, Dr. Haffizulla treated plaintiff on a number of occasions and never opined plaintiff was disabled from all work. She repeatedly refused to state plaintiff was unable to perform sedentary work, despite plaintiff's requests, and referred Moats for a functional assessment to determine her true capacity for work activity. When the assessment recommended plaintiff perform light work activity, Dr. Haffizulla gave no indication that she disagreed with such an assessment or felt it did not accurately represent plaintiff's abilities. Dr. Haffizulla also

8

refused to comply with plaintiff's request that she write a note recommending that a child support hearing scheduled to take place in Pennsylvania be moved to Virginia on account of plaintiff's medical condition. (R. 281) Instead, Dr. Haffizulla suggested plaintiff try to sleep in the back of the car, bring her medications along, and stop and walk around every hour or so on the drive up to the hearing. (R. 281)

No other evidence in the record suggests that plaintiff is disabled from all work. The state agency physicians reviewed plaintiff's medical records and, based on the evidence, found plaintiff capable of occasionally lifting twenty (20) pounds, frequently lifting ten (10) pounds, and standing, walking and sitting for six (6) hours in an eight (8) hour workday with normal breaks. (R. 218) Plaintiff's own testimony as to her daily activities does not support a finding that she is disabled from all work activity. Plaintiff stated she walks for exercise, grocery shops with her girlfriend, and occasionally dines with family and friends. (R. 94) She cooks breakfast and lunch for herself daily, though she needs help reaching into cabinets, peeling and slicing. (R. 95) She also dusts furniture, does the dishes daily, and sweeps the floor. (R. 95, 357) Moats reports she reads magazines, newspapers, and novels for about an hour per day, and watches television and listens to the radio for three hours per day. (R. 96, 359) She noted no difficulty understanding or remembering what she reads, watches or listens to. (R. 97) She also plays computer games and sends emails. (R. 358) She stated she talks to friends and relatives on the phone twice per week, goes out to dinner two or three times per month, drives around town, feeds and bathes her cats, and helps her girlfriend with bills, cooking and cleaning. (R. 97, 358) Though she walks with a cane, the walking device was not prescribed by a doctor, (R. 359), and plaintiff has twice been found to have the ability to balance herself frequently. (R. 219, 313)

Substantial evidence in the record supports the ALJ's decision to accord less weight to Dr. Johnson's opinion that plaintiff is disabled from all work, as his opinion is conclusory and unsubstantiated by objective medical evidence. As such, the decision of the ALJ is affirmed.

## IV

As an alternative to granting summary judgment in favor of plaintiff, Moats requests that the court remand this case under sentence six of 42 U.S.C. § 405(g) for consideration of new evidence provided in Exhibit 1 to plaintiff's brief.

Sentence six authorizes the court to remand a case to the Commissioner upon a showing of new, material evidence, for which good cause can be shown for the failure to incorporate such evidence into the record in a prior proceeding. 42 U.S.C. § 405(g); Borders v. Heckler, 777 F.2d 954, 955 (4th Cir. 1985). Sentence six applies specifically to evidence not incorporated into the record by either the ALJ or the Appeals Council. (See, e.g., Pl.'s Br. Ex. 1)

The Fourth Circuit in Borders held that a reviewing court may remand a case to the Commissioner on the basis of newly discovered evidence if four prerequisites are met. Borders, 777 F.2d at 955. First, the evidence must relate back to the time the application was first filed and it must be new, in that it cannot be merely cumulative. Id.; see also Wilkins v. Sec'y, Dep't Health & Human Servs., 953 F.2d 93, 96 (4th Cir. 1991). The evidence must also be material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before her. Borders, 777 F.2d at 955. There must be good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner. Id. Finally, the claimant must present to the remanding court at least a general showing of the nature of the new evidence. Id.

10

Plaintiff has met the fourth step of the Borders test in this case, as plaintiff has provided the court with the evidence to be considered on remand and the court understands its nature. See Borders, 777 F.2d at 955. The records presented to the court for consideration in Exhibit 1, Tab A are records from Robert R. Johnson, M.D. dated May 19, 2005 and September 1, 2005. Because the records from September 1, 2005 were not in existence at the time the ALJ or Appeals Council issued their decisions, there is good cause shown as to why the records were not previously submitted for review. See id. Additionally, while the May 19, 2005 records were not in existence at the time the ALJ issued his decision, they were in existence prior to the Appeal's Council decision, and plaintiff has not shown good cause as to why these records were not previously submitted to the Appeals Council for review.

Furthermore, the documents contained in Exhibit 1, Tab A do not satisfy the other requirements under Borders. The records provide no new, material evidence that could reasonably be calculated to change the Commissioner's decision about plaintiff's impairments and residual functional capacity. Records of May 19, 2005 reveal plaintiff aggravated her left shoulder pain after falling in the shower. However, notes prove plaintiff's pain improved with injections on the last visit. Plaintiff again presented to Dr. Johnson on September 1, 2005 complaining of bilateral hand pain, which he assessed as carpal tunnel syndrome and recommended splints.

While this evidence is new, it is not material. An implicit materiality requirement is that the new evidence relate to the time period for which benefits were denied, and that it not concern evidence of a later-acquired disability or the subsequent deterioration of the previous non-disabling condition. Szubak v. Sec'y, Dep't Health & Human Servs., 745 F.2d 831, 833 (3d Cir.

11

1984); see also Baker v. Shalala, No. 1:92-0229, 1993 U.S. Dist. Lexis 16130, at *16-18 (S.D. W. Va. Sept. 30, 1993). Plaintiff has failed to show how her complaints on May 19, 2005 and September 1, 2005 relate to the period of disability on or before the date of the ALJ's decision. Instead, the records relate to a time after the ALJ's decision, when plaintiff fell and exacerbated her shoulder injury, and subsequently developed signs of carpal tunnel syndrome. As such, a sentence six remand is inappropriate. Furthermore, plaintiff has failed to show a reasonable possibility that these records might change the ALJ's decision. Plaintiff may choose to file a new Social Security application if she feels that she now meets the requirements of disability. 20 C.F.R. § 404.620(a)(2).

## V

Accordingly, the decision of the Commissioner is affirmed, and defendant's motion for summary judgment is granted.

In affirming the final decision of the Commissioner, the court does not suggest that plaintiff is totally free of all pain and subjective discomfort. The objective medical record simply fails to document the existence of any condition which would reasonably be expected to result in total disability for all forms of substantial gainful employment. It appears that the ALJ properly considered all of the objective and subjective evidence in adjudicating plaintiff's claim for benefits. It follows that all facets of the Commissioner's decision in this case are supported by substantial evidence. Defendant's motion for summary judgment must be granted.

Case 7:05-cv-00462-mfu   Document 19   Filed 04/25/06   Page 12 of 13   Pageid#: 77

The Clerk of the Court hereby is directed to send a certified copy of this Memorandum Opinion to all counsel of record.

**ENTER:** This 24th day of April, 2006.

_____
Michael F. Urbanski
United States Magistrate Judge